**No. 25-30325**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

WESTON MERRIOTT,

*Plaintiff - Appellant*

V.

CITY OF BOSSIER CITY; JEFFREY FREE, in his official & individual capacities; DAVID A. MONTGOMERY, in his official & individual capacities; JEFFERY DARBY; CHARLES JACOBS, in his official capacity,

*Defendants - Appellees*

On Appeal from the United States District Court for the Western District of Louisiana,
Case No. 5:23-cv-01420

**BRIEF OF APPELLANT WESTON MERRIOTT**

Bruce Hamilton, La Bar No. 33170
Annie Cleveland, La Bar No. 41473
Tulane First Amendment Clinic
6329 Freret Street, Suite 130
New Orleans, La 70118
bhamilton1@tulane.edu
acleveland@tulane.edu
o: (504)862-8813

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal:

| | |
|---|---|
| Weston Merriott | Plaintiff-Appellant |
| Tulane First Amendment Law Clinic | Counsel for Plaintiff |
| Bruce Hamilton | Counsel for Plaintiff |
| Annie Cleveland | Counsel for Plaintiff |
| Jeffery Free | Defendant-Appellee |
| Jeffrey Darby | Defendant-Appellee |
| David Montgomery | Defendant-Appellee |
| Charles Jacobs | Defendant-Appellee |
| Weiner Weiss & Madison APC | Counsel for Defendant-Appellee |
| Layne Clark | Counsel for Defendant-Appellee |
| Reid Jones | Counsel for Defendant-Appellee |
| Wilkinson, Carmody, & Gilliam | Counsel for Defendant-Appellee |
| Bobby Gilliam | Counsel for Defendant-Appellee |

Alex Whittington,                        Counsel for Defendant-
                                         Appellee

                                         */s/Anna Cleveland*
                                         Attorney of Record for Weston Merriott

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Cir. R. 28.2.3, Plaintiff-Appellant respectfully requests oral argument. This case presents serious issues involving the fundamental constitutional right of freedom of speech, and specifically the right of citizens to criticize public officials during the open comment period of a public meeting.

# TABLE OF CONTENTS

*CERTIFICATE OF INTERESTED PERSONS*.......................................................*i*

*STATEMENT REGARDING ORAL ARGUMENT*............................................. *iii*

*TABLE OF CONTENTS* ...........................................................................*iv*

*JURISDICTION*.........................................................................................*1*

*STATEMENT OF ISSUES*.........................................................................*1*

*STATEMENT OF CASE* ...........................................................................*2*

   I.   **Introduction**................................................................................*2*

   II.  **Statement of Facts**...................................................................*3*

*SUMMARY OF ARGUMENT*......................................................................*8*

*ARGUMENT* .........................................................................................*10*

   **I. The speech restrictions are facially overbroad.** ............................**10**
     A.  The speech prohibition against personal, impertinent, slanderous, and boisterous comments is overbroad. ...................................................10
     B.  Merriott's overbreadth challenge is not barred by his injury. ...................12

   **II.  The speech restrictions are void for vagueness.** ..........................**15**
     A.  The restrictions provide no notice of prohibited speech............................16
     B.  The district court erred in misapplying the vagueness test........................20

   **III.    The speech restrictions are viewpoint-based discrimination.**...............**21**

   **IV. The speech restrictions are content-based discrimination**.......................**24**
     A.  The speech restrictions do not pursue a permissible  objective related to the purpose of the forum. .....................................................25
     B.  The speech restrictions contain no workable standards............................27

   **V. The speech restrictions are unconstitutional as applied to Merriott**........**29**
     A.  Defendant's policy was the moving force. ..................................................31
     B.  Defendants have final policymaking authority..........................................33

   **VI.    Defendants retaliated against Merriott because of his speech. ...........37**

   **VII.   Defendants violated the state Constitution and Open Meetings Law. 39**

*CONCLUSION* ......................................................................................*41*

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. City of Costa Mesa*, 718 F.3d 800 (9th Cir. 2013) .....................12

*Asgeirsson v. Abbott*, 773 F.Supp.2d 684 (W.D. Tex. 2011), *aff'd*, 696 F.3d 454 (5th Cir. 2012)...................................................27

*Bach v. Sch. Bd. of Virginia Beach*, 139 F.Supp.2d 738 (E.D. Va. 2001) ..............26

*Brockett v. Spokane Arcades, Inc*, 472 U.S. 491 (1985) .................................13, 15

*Carey v. Brown*, 447 U.S. 455 (1980)...................................................9

*City of Madison, Joint Sch. Dist. No. 8 v. Wis. Employment Relations Comm'n*, 429 U.S. 167 (1976)...................................................26

*Cohen v. California*, 403 U.S. 15 (1971). ...................................................21

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985) ..........29

*Cuvillier v. Sullivan*, 503 F.3d 397 (5th Cir. 2007)...................................................10

*Danielson v. Chester Twp.*, No. 13-5427, 2014 WL 3362435, *5 (D.N.J. July 9, 2014) ...................................................39

*Draego v. City of Charlottesville*, No. 3:16-cv-00057; 2016 WL 6834025  (W.D. Va. Nov. 18, 2016)...................................................12, 17, 19, 20, 24

*Elrod v. Burns*, 427 U.S. 347, 373 (1976)...................................................40

*Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747 (5th Cir. 2010)...............22, 27

*Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123 (1992) .........................28, 29

*Freedom From Religion Found. v. Abbott*, 955 F.3d 417(5th Cir. 2020 ...............25

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98; 121 S.Ct. 2093; 150 L.Ed.2d 151 (2001)...................................................21

*Grayned v. City of Rockford*, 408 U.S. 104 (1972). ...................................16, 20

*Griffin v. Bryant*, 30 F.Supp.3d 1139 (D.N.M. 2014) ...................................30

*Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017) ...................................23

*Hernandez v. W. Tex. Treasures Estate Sales, L.L.C.*, 79 F.4th 464 (5th Cir. 2023) ...................................................9, 10

*Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887 (6th Cir. 2021)....17, 23, 30

*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002). ...................................38, 39

*Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266 (9th Cir. 1995)...................26

*Leventhal v. Vista Unified Sch. Dist.*, 973 F.Supp. 952 (S.D. Cal. 1997). ..............30

*Lewis v. Danos*, 83 F.4th 948 (5th Cir. 2023) ...................................9, 40, 43

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009). ...................................9

*MacQuigg v. Albuquerque Pub. Sch. Bd. of Educ.*, No. 12-1137, 2015 WL 13659218 (D.N.M. Apr. 6, 2015) ...................................................23, 30

*Marshall v. Amuso,* 571 F.Supp.3d 412 (E.D. Pa. 2021) ...................12, 17, 18, 20

*McClelland v. Katy Indep. Sch. Dist., 63 F.4th 996, 1012 (5th Cir. 2023)*.............10

*Minn. Voters All. v. Mansky,* 585 U.S. 1 (2018)…………………………….…..*passim*

*Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Sch.*, 118 F.4th 1324 (11th Cir. 2024) .................................................................................................23

*Monroe v. Houston Indep. Sch. Dist.*, 419 F.Supp.3d 1000 (S.D. Tex. 2019), *vacated in part on other grounds*, No. 19-1991, 2021 WL 5830822 (S.D. Tex. Nov. 3, 2021) ...........................................................................12, 17, 20, 23

*Monroe v. Houston Indep. Sch. Dist.*, 794 F. App'x 381 (5th Cir. 2019) ..............30

*Moore v. Asbury Park Bd of Educ.*, No. A.05-2971, 2005 WL 2033687 (D.N.J. Aug. 23, 2005) ............................................................................................30

*N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886 (1982) ..................................9

*Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984). ...........42

*Roark & Hardee LP v. City of Austin,* 522 F.3d 533 (5th Cir. 2008)......................20

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995). .22, 23, 25

*Roy v. City of Monroe*, 950 F.3d 245 (5th Cir. 2020) ............................................18

*Seals v. McBee,* 898 F.3d 587 (5th Cir. 2018)..........................................................14

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir.2020), as revised (Oct. 30, 2020). ..................................................................................................40

*Street v. New York,* 394 U.S. 576 (1969) ................................................................22

*Stromberg v. California,* 283 U.S. 359 (1931) ..........................................................2

*Sweetin v. City of Texas City,* 48 F.4th 387 (5th Cir. 2022) ...................................31

*Terminiello v. Chicago*, 337 U.S. 1 (1989). ..............................................................2

*Turner v. Pleasan*t, 663 F.3d 770 (5th Cir. 2011), *as revised* (Dec. 16, 2011).......10

*United States v. Hansen,* 599 U.S. 762 (2023) ......................................................10

*United States v. Hicks,* 980 F.2d 963 (5th Cir. 1992)......................................13, 14

*United States v. Kokinda,* 497 U.S. 720 (1990) ....................................................25

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489 (1982). 16

*Wright v. Anthony*, 733 F.2d 575 (8th Cir. 1984)...................................................26

## Statutes

La. R.S. 42:13(A)(2)....................................................................................................42

La. R.S. 42:15(C). ......................................................................................................42

## Other Authorities

La. Const. art. XII, § 3...............................................................................................41

Nikolas Bowie, *The Constitutional Right of Self-Government,* 130 Yale L.J. 1652, 1664 (2021). .........................................................................................................2

## JURISDICTION

Federal court jurisdiction exists because Plaintiff-Appellant Weston Merriott alleges violations of the First Amendment. 28 U.S.C. § 1331. This Court has jurisdiction because Merriott appeals from final judgment dismissing his claims. 28 U.S.C. § 1291. The district court entered judgment on the 14th day of May 2025, and Merriott timely appealed on the 27th day of May, 2025. ROA.1583, 1588.

## STATEMENT OF ISSUES

I.   Did the district court err in dismissing Merriott's First Amendment overbreadth challenge to public comment restrictions prohibiting personal, impertinent, boisterous, and slanderous remarks?

II.   Did the district court err in dismissing Merriott's void for vagueness challenge to the speech rules lacking standards for enforcement?

III.   Did the district court err in dismissing Merriott's facial viewpoint and content-based challenges to the speech restrictions?

IV.   Did the district court err in dismissing Merriott's as-applied claims on *Monell* grounds?

V.   Did the district court err in dismissing Merriott's retaliation claim?

VI.   Did the district court err in dismissing Merriott's Louisiana Open Meetings Law claim?

# STATEMENT OF CASE

## I. Introduction

The freedom to express criticism to and about public officials is foundational

to our democracy.

> The vitality of civil and political institutions in our society
> depends on free discussion … [and] it is only through free
> debate and free exchange of ideas that government remains
> responsive to the will of the people and peaceful change is
> effected.  The right to speak freely… is therefore one of the
> chief distinctions that sets us apart from totalitarian regimes …

*Terminiello v. Chicago*, 337 U.S. 1, 4 (1989). Throughout our Nation's great history,

"town meetings" have served as fora for robust political dialogue and dissent.

Nikolas Bowie, *The Constitutional Right of Self-Government,* 130 Yale L.J. 1652,

1664 (2021).  Public meetings were the starting place of the American Revolution

and a cornerstone of our democracy.   *Id.*   at 1663. Courts have therefore long

recognized that the exchange of ideas at public meetings is crucial to government

transparency and democratic change.  *Stromberg v. California*, 283 U.S. 359, 369

(1931).

City council meetings are one of the few forums where citizens have direct

access to local government representatives. Public comment at such meetings—

particularly criticism and dissent—is the lifeblood of our democratic process and

must be protected from government overreach. The Bossier City Council speech

restrictions improperly censor civic participation. They are unconstitutional facially

and as applied to Plaintiff Merriott, and their application to Merriott was retaliatory. The actions of Defendants Free, Montgomery, and Darby in their individual capacities violate Louisiana's Open Meetings Law. Merriott's claims should not have been dismissed.

## II. Statement of Facts

Plaintiff Weston Merriott (hereinafter "Merriott") is a retired law enforcement officer, combat veteran, member of the Louisiana Republican State Central Committee, and founder of an online newsroom covering Bossier City and South Bossier. ROA.21. He is an engaged citizen and frequently attends Bossier City Council (hereinafter "City Council" or "Council") meetings and participates in public comment. ROA.21. Mr. Merriott always uses his public comment time thoughtfully and with purpose—he is always on-topic, not disruptive, and mindful of decorum rules. *See e.g.* ROA.24-25, 38. In summer 2023, Bossier City citizens petitioned for term-limits for city councilmembers and the mayor. ROA.23-31. Defendant councilmembers refused to implement the citizen petition. ROA.23-31. Merriott began attending Council meetings to inform the public about this issue. ROA.23-31.

Every City Council meeting begins with a truncated reading of the Council's rules by the city clerk. At the July 18, 2023, meeting, at which the Council discussed the term-limit petition, the clerk read the following:

In accordance with Louisiana Open Meetings Laws and the adopted Bossier City Council Meeting Rules Resolution, the City Council asks for order and decorum at our meetings. […] Anyone wishing to address the Council on any agenda item may approach and state their names and address for the record and shall be permitted three minutes to make their comments on the particular item that's up for discussion, with up to four speakers per side. All other audience members are asked to please observe the meeting quietly and, if there is a need for audience members to hold a conversation or take a phone call, you're asked to please step out of the meeting. [The] City Council-appointed Sergeant-at-Arms have been instructed to maintain decorum and ask anyone in violation to step out of the meeting in order to maintain orderly conduct of the meeting.

ROA.24. At the August 1 meeting, Merriott spoke during the public comment period regarding the term-limits petition, noting that many of the councilmembers would be ineligible to seek reelection if the citizens voted in favor of term-limits. ROA.25. He also criticized a contract between the Council and an outside lawyer hired to work on the term limit issue. ROA.25. When Merriott brought up the contract, Defendants Free and Montgomery interrupted Merriott's time to speak. ROA.25. At the next meeting on August 15, the clerk read the following speech restrictions:

Any person **making personal, impertinent or slanderous remarks or who shall become boisterous while addressing the Council shall be forthwith, by the President Pro-tem, barred from further audience before the Council**, unless permission to continue [is]granted by a majority vote of the Council. All remarks shall be addressed to the Council as a body and not to any member thereof. No questions shall be asked a Council person or the mayor except through the meeting chair.

ROA.26. Merriott again spoke during the public comment period and objected to the Council's inaction on the term-limits petition. Defendants Free and Darby again

interrupted him. ROA.27. Darby then asked the clerk to read the speech restrictions; she said:

> **Any person making personal, impertinent or slanderous remarks or who shall become boisterous while addressing the Council shall be forthwith, by the President Pro-tem, barred from further audience before the Council,** unless permission to continue be granted by a majority vote of the Council.

ROA.27. Merriott realized the interruption was an attempt to censor and chill his speech. After the meeting he sent a letter to the Council asking it to respect his First Amendment rights and refrain from interrupting him during his prepared comments. ROA.28.

On September 5, the clerk began the Council meeting by reading the same speech restrictions read on August 15 and 29. ROA.28-29. The agenda had items related to the citizen-led term-limit initiative. Merriott had prepared comments and again criticized the inaction of the Council, stating: "Weeks were squandered waiting for an outside opinion from an 'unbiased' attorney who just so happened to have represented Mr. Montgomery 10 years ago." ROA.28-29, 535. Defendant Montgomery erupted, calling on Defendant Free to have Merriott "removed from the council chambers because of that kind of statement." ROA.28-29, 535. Merriott continued with his comments while Montgomery repeatedly called for his removal. ROA.28-29, 535. Free interrupted and instructed Merriott not to make accusations

against councilmembers. During this exchange, Councilman Donald Williams waved the Deputy City Marshall over to remove Merriott. ROA.28-29, 535.

Directly after this meeting, a quorum of councilmembers met in an unlawful closed meeting to discuss potential changes to the public-comment rules. ROA.30-31. In a leaked audio recording, Councilmembers Darby, Williams, Maggio, and Montgomery, with the city clerk, proposed moving public comment to the beginning of every meeting and eliminating the public-comment period on each agenda item, in retaliation for the speech critical of their handling of the term-limit petition. ROA.30-31.

### Proceedings Below

On October 9, 2023, Merriott filed this action pursuant to 42 U.S.C. § 1983, alleging the Defendants Bossier City, Free, Darby, Montgomery, and Jacobs deprived him of his First Amendment rights and violated the Louisiana Open Meetings Law (hereinafter "OML"). ROA.19-45. On December 1, 2023, Defendants Darby, Free, Montgomery, and Jacobs (hereinafter "Individual Defendants") and the City of Bossier City (hereinafter the "City") filed motions to dismiss. ROA.104-173. On January 25 and 26, 2024, Merriott filed his oppositions. ROA.226-312. The Individual Defendants and the City filed replies. ROA.389-406.

After learning new facts, Merriott sought leave to supplement and amend his Complaint on April 5, 2024. ROA.496. These new facts included direct evidence

that Merriott was silenced pursuant to Council's speech restrictions, and that the Council wanted to change public comment rules in retaliation for Merriott's critical speech. ROA.499-501, 509-536. It also included the Council's readoption of the policy containing the speech restrictions, and facts demonstrating that Jacobs assisted the council in violating the Open Meetings Law. ROA.499-501, 509-536. The district court granted Merriott's motion on May 21, 2024, and allowed the Individual Defendants and City to file supplemental motions to dismiss. ROA.628-633. Merriott opposed the supplemental motions. ROA.724-754.

On August 30, 2024, the Magistrate Judge issued her Report and Recommendations. ROA.829-875. Merriott timely objected. ROA.829-875. On September 30, the district court dismissed all of Merriott's claims against the Individual Defendants and the majority of his claims against the City. ROA.1030-1031. Merriott's overbreadth challenge to two provisions of the speech restrictions survived. ROA.1030-1031. Because that judgment contained legal errors, Merriott filed a motion to certify the judgment as final in order to take an appeal to this Court. That motion was denied. ROA.1075-1087.

Immediately prior to depositions on Merriott's two remaining claims—and more than a year since the amended complaint was filed—the Council voted to revise *only* the speech restrictions that were the basis for Merriott's remaining claims. ROA.1337-1354. Defendants filed a notice to the court regarding the rule change

and motions to dismiss, stay discovery, and quash the previously set depositions. ROA.1337-1354, 1355, 1501-1510. Plaintiff opposed all motions. ROA.1378-1500, 1511-1521. On May 2, the Magistrate Judge issued a Report recommending dismissal of Merriott's remaining claims for lack of subject matter jurisdiction. ROA.1547-1571. Plaintiff filed objections, arguing that the amended policy remained unconstitutionally overbroad. ROA.1572-1582. On May 14, the judgment became final. ROA.1583. Plaintiff appeals the September 30, 2024, dismissal of his claims.

## SUMMARY OF ARGUMENT

"Citizens' speech on public issues is 'on the highest rung of the hierarchy of First Amendment values.'" *N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886, 913 (1982) (quoting *Carey v. Brown*, 447 U.S. 455, 467 (1980)). Nowhere is this principle more important than in a forum established for public comment to an elected governing body. The speech restrictions at issue here bar vast swaths of political discourse, prohibiting speech that is disfavored by the Council. Such censorship threatens public participation and damages democracy.

The district court erred in dismissing Plaintiff's claims. The challenged policy is unconstitutional on its face and as applied to Merriott. Defendants' actions were unconstitutional and contravened Louisiana's Open Meetings Law. In dismissing Merriott's claims, the district court disregarded Plaintiff's well-pleaded facts and

substituted its own reasoning for well-established legal tests. The challenged speech restrictions remain in place now and continue to unlawfully restrict constitutionally protected speech. Plaintiff seeks this Court's intervention.

An appellate court employs a *de novo* standard when reviewing the district court's order granting a Rule 12(b)(6) motion to dismiss. *Hernandez v. W. Tex. Treasures Estate Sales, L.L.C.,* 79 F.4th 464, 469 (5th Cir. 2023). All facts in the complaint are accepted as true. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Allegations must be examined in the light most favorable to the plaintiff, with every reasonable inference resolved in the plaintiff's favor. *Lewis v. Danos,* 83 F.4th 948, 953 (5th Cir. 2023). "To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must prove the plaintiff's grounds for entitlement to relief—including factual allegations in a complaint that when assumed to be true raise a right to relief above the speculative level." *Hernandez,* 79 F.4th at 469 (quoting *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), *as revised* (Dec. 16, 2011).

For the reasons below, Merriott adequately set forth sufficient facts to state claims that entitle him to relief.

# ARGUMENT

## I. The speech restrictions are facially overbroad.

A regulation is constitutionally overbroad if it prohibits a substantial amount of constitutionally protected freedoms in relation to the regulation's "plainly legitimate sweep" and are too "imprecisely drawn to pass First Amendment scrutiny." *Hill v. City of Houston, Tex*, 764 F.2d 1156, 1162-1163 (5th Cir. 1985). First, courts assess the scope of the rule to see who and what is prohibited. *Moody v. NetChoice, LLC,* 603 U.S. 707, 724 (2024). Next, courts determine which applications violate the First Amendment and weigh those against lawful applications. *Id.* If the challenger demonstrates the rule prohibits a "substantial amount of protected speech" relative to its "plainly legitimate sweep," then society's interest in free expression outweighs the government interest in the rule's lawful applications, and a court will hold it facially invalid. *See United States v. Hansen*, 599 U.S. 762, 770 (2023).

### A. The speech prohibition against personal, impertinent, slanderous, and boisterous comments is overbroad.

Our country has a "profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide open," which "may well include vehement, caustic and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Speech that is boisterous, slanderous, personal, or impertinent—though perhaps disfavored

by elected officials—is constitutionally protected and indeed essential to the democratic process.

A plain reading of Bossier's policy prohibits citizens from stating simple yet direct comments to a council member such as: "X councilmember wants to waste our tax dollars." A citizen who challenges a mask mandate by stating, "The council has a woke agenda" could be ejected for impertinence. Bringing up a specific official's voting record could be deemed "personal" speech. Such speech may be relevant to the subject matter of the public-comment period but run afoul of Defendants' rules. Necessary and important critiques of the Council are prohibited by its ban. A common-sense reading of these terms restricts a substantial amount of constitutionally protected speech.

Other federal courts have accordingly found that the specific terms contained in Defendants' rules prohibit core political speech and are overly broad. *See Monroe v. Houston Indep. Sch. Dist.*, 419 F.Supp.3d 1000, 1008 (S.D. Tex. 2019), *vacated in part on other grounds*, No. 19-1991, 2021 WL 5830822 (S.D. Tex. Nov. 3, 2021) (a restriction on "personal attacks" e.g., "name-calling" and "offensive or derogatory remarks" was overbroad); *Marshall v. Amuso,* 571 F.Supp.3d 412, 425 (E.D. Pa. 2021) (a policy prohibiting comments deemed "too lengthy, personally directed, abusive, obscene, or irrelevant" was overbroad); *Acosta v. City of Costa Mesa*, 718 F.3d 800, 815-16 (9th Cir. 2013) (a policy prohibiting "any personal, impertinent,

profane, insolent, or slanderous remarks" was "overbroad, because it unnecessarily sweeps a substantial amount of non-disruptive, protected speech within its prohibiting language."); *Draego v. City of Charlottsville,* No. 3:16-cv-00057; 2016 WL 6834025, at *21 (W.D. Va. Nov. 18, 2016) (rule against "defamatory attacks" was overbroad as it "would countenance prohibiting a wider array of clearly on-topic statements on matters of public concern.").

### B. Merriott's overbreadth challenge is not barred by his injury.

The district court misapplied overbreadth doctrine, holding that Merriott's overbreadth claim should be dismissed because third-party rights implicated by his overbreadth claim are "to some extent coterminous" with Merriott's own rights. ROA.845. This holding contorts this Court's instructions regarding "coterminous" overbreadth, creating an untenable situation in which no overbreadth plaintiff can assert an as-applied challenge if his rights even tangentially overlap with those of third parties. Moreover, the court's holding misconstrues Merriott's well-pleaded factual allegations as to the speech restrictions' effect on everyone.

The rationale of the overbreadth doctrine "is to protect the expressive rights of *third parties* who are not before the court." *United States v. Hicks,* 980 F.2d 963, 969 (5th Cir. 1992) (citing *Brockett v. Spokane Arcades, Inc,* 472 U.S. 491, 504 (1985)). The district court reasoned that, because Merriott's as-applied challenge would afford him all necessary relief and provide relief to affected third parties, his

overbreadth claim should be barred. ROA.845. But Merriott's as-applied challenge is distinctly different from his overbreadth claim, and he properly alleged that the speech restrictions would affect third parties differently. Moreover, the district court then proceeded to dismiss Merriott's as-applied challenge on *Monell* grounds, thus foreclosing all relief to him as well as third parties. For these reasons, his overbreadth claim should have been allowed to proceed.

The district court's application of a coterminous overbreadth prohibition relies upon the narrow ruling of *United States v. Hicks*, 980 F.2d 963, 969 (5th Cir. 1992). The *Hicks* plaintiffs were criminally sanctioned after altercations with airline staff. They were convicted of intimidating the crew on a flight, and they challenged that law as overly broad under the First Amendment. *Hicks*, 980 F.2d at 966. The overbreadth challenge failed because they "pointed to no potential applications [that] were distinct from their own situation." *Seals v. McBee*, 898 F.3d 587, 599 (5th Cir. 2018). The *Hicks* court noted that because of the limited statute and facts to which it would apply, there was no substantial chilling effect on other protected speech, which is one of the main purposes of the overbreadth doctrine. *Id. Hicks* is inapposite because Merriott pointed to several applications of the speech restrictions distinct from his own.

Unlike the *Hicks* plaintiffs who engaged in rare criminal behavior, Bossier City citizens can and do regularly make public comments on any agenda item at

Council meetings. The speech prohibitions impact hundreds of speakers commenting on topics other than those raised by Merriott, at different meetings. Merriott made this point in his Complaint, providing numerous examples of the Council using its challenged restrictions to silence disfavored viewpoints of Merriott **and** others on whom the restrictions will have a different impact. *See* ROA.32-34, 636-638, 648-651. Like the plaintiff in *McBee*, Merriott has raised "numerous hypotheticals not coterminous with the conduct" for which third-party speech was chilled, and has also pleaded facts showing the same, which is more than sufficient to sustain his facial challenge. *McBee,* 898 F.3d at 599; *See also* ROA.327 ("Those favoring Ordinance X are liars who have deceived you."). *Hicks* is not applicable, for the same reasons this Court declined to expand its application in *McBee*.[1]

Bossier City citizens (including Merriott) routinely speak during the public-comment period of Council meetings. Merriott's comments were silenced pursuant to the prohibition of speech deemed slanderous, personal, impertinent, and boisterous. ROA.639-645, 699 (letter from Bossier City Attorney Charles Jacobs stating Merriott's comments violate the Council rules which prohibit "any person making personal, impertinent or slanderous remarks[.]").   Merriott's overbreadth

---

[1] The district court cites to *Brockett* to hold that if a plaintiff brings a facial overbreadth challenge and the plaintiff's conduct is covered by the challenged restriction, then the challenge should be analyzed as-applied and not facially. But the *Brockett* court simply evaluated the extent to which a court could invalidate a statute entirely when an unconstitutional provision could be severed, not whether a plaintiff could bring a facial challenge. *See Brockett,* 472 U.S. 491.

claim is proper because this prohibition risks chilling the speech of every citizen wishing to speak at a Council meeting, albeit on different subjects and at different meetings, with different impacts. ROA.32-34, 636-638, 648-651. It also will operate to chill Merriott's speech on different subjects, at different meetings, indefinitely into the future, unless it is struck down. The district court erred in holding that Merriott insufficiently alleged that the speech restrictions implicate the rights of third parties. Merriott pleaded his claim and articulated the rules' impact on everyone, which is what he is required to do at this stage of the proceedings. Requiring him to provide proof of impact on third parties would contravene the very purpose of the overbreadth doctrine. The Court can evaluate whether the rule proscribes substantially more speech than it may constitutionally do, and such is the case here, on the face of the rules.

These restrictions allow the Council unfettered overreach to silence dissent and are also overbroad as to Merriott's own speech. This is a paradigmatic overbreadth case—when a speech restriction sweeps too much plainly protected speech within its ambit, it must be declared overbroad.

## II.     The speech restrictions are void for vagueness.

A law is unconstitutionally vague if it (1) fails to provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly"; or (2) if the law lacks explicit standards for those who apply them

allowing arbitrary and discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). When First Amendment rights are at issue, a "more stringent vagueness test" applies because vague laws leave citizens unsure if their actions will transgress a rule, which causes injurious self-censorship. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Defendants' speech restrictions are unconstitutionally vague because they fail "to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

### A. The restrictions provide no notice of prohibited speech.

The prohibition on speech deemed personal, impertinent, slanderous, and boisterous lacks objective standards and is capable of various interpretations. ROA.35. No guidelines assist citizens to make remarks that avoid violating the policy, except to refrain from criticizing or offending the Council or its members. ROA.35.

Similarly analogous rules fail to pass constitutional muster. *See Monroe v. Houston Indep. Sch. Dist.*, 419 F.Supp.3d 1000, 1008 (S.D. Tex. 2019), *vacated in part on other grounds*, No. 19-1991, 2021 WL 5830822 (S.D. Tex. Nov. 3, 2021) (restriction on "personal attacks," "name-calling" and "offensive or derogatory remarks" unconstitutionally vague); *Marshall v. Amuso*, 571 F.Supp.3d 412, 424 (E.D. Pa. 2021) (policy prohibiting comments deemed "too lengthy, personally

directed, abusive, obscene, or irrelevant" unconstitutionally vague); *Draego v. City of Charlottesville,* No. 3:16 -00057, <mark>2016 WL 6834025</mark>, at *22 (W.D. Va. Nov. 18, 2016) (rule banning group defamation unconstitutionally vague). Restrictions permitting "praise or neutral feedback" while prohibiting criticism of individuals are unconstitutionally vague. *See Ison v. Madison Local Sch. Dist. Bd. of Educ.*, <mark>3 F.4th 887, 894</mark> (6th Cir. 2021).

Any person of ordinary intelligence will struggle to understand what is prohibited by the terms boisterous, personal, impertinent, and slanderous. Impertinent, personal, and boisterous have no accepted legal definitions.[2]  Speakers are unable to anticipate what speech is not permitted, which chills protected speech. Because every speaker and listener will have a different interpretation of these terms and what is permitted, the rules are vague. *Marshall*, <mark>571 F.Supp.3d at 424</mark>.

---

[2] **Boisterous** is defined as "noisily turbulent" and "rough or course in quality." *Boisterous,* merriam-webster.com,  https://www.merriam-webster.com/dictionary/boisterous  (last visited August 21, 2025); *Boisterous,* oed.com, https://www.oed.com/dictionary/boisterous_adj?tab=meaning_and_use#17073773  (last visited August 21, 2025).
**Personal** is defined as "Of, relating to, concerning, or affecting a person as a private individual (rather than as a member of a group or the public, or in a public or professional capacity); individual, private; one's own" and also "of, relating, to, or affecting a particular person. *Personal,* oed.com, https://www.oed.com/dictionary/personal_adj?tl=true (last visited August 21, 2025); *Personal,* merriam-webster.com,  https://www.merriam-webster.com/dictionary/personal  (last visited.August 21, 2025).
**Impertinent** is defined as "given to or characterized by insolent rudeness" or "not relating to the subject    at    hand."    *Impertinent,*    merriam-webster.com,    https://www.merriam-webster.com/dictionary/impertinent  (last visited August 21, 2025); *Impertinent,* oed.com, https://www.oed.com/dictionary/impertinent_adj?tab=meaning_and_use#855404  (last visited August 21, 2025).

As a pointed example, the district court erroneously determined that the term "boisterous" is "sufficiently clear" to provide notice, ROA.848, relying on *Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020). But the *Roy* case interpreted "boisterous" in a different context involving *conduct*, not speech. In fact, this Court questioned whether a prohibition on "boisterous conduct" would survive an overbreadth challenge, standing alone and without context. *Id.* at 252-253. In the context of the speech restrictions, an individual cannot know when speech is so animated as to become "boisterous." Passionate advocates desiring to speak to their elected officials on important local issues that immediately impact their families and community may refrain from speaking for fear of being removed as "boisterous." It is impossible for citizens to know when speaking with conviction crosses a subjective line into boisterousness.

Similarly, persons of ordinary intelligence may disagree on what makes speech "impertinent," which can mean either rude or not relevant. The prohibition is unclear and likely to cause individuals to refrain from speaking candidly. Some citizens may believe "personal" means private; others will believe it means how an agenda item affects them personally, while others will assume personal remarks refers strictly to those directed to an individual. Speakers will automatically self-censor any critique they have of the Council and its members for fear that they are violating its rules.

The term "slanderous" is also capable of several meanings.[3] Slander, i.e. defamation, is a legal standard that councilmembers are unable to apply, given that Defendants' policy contains no guidelines. *Draego*, 2016 WL 6834025, at *22. Defamation requires a court to determine essential elements to impose liability; lay citizens do not know the word's legal definition. This simply cannot be done in the real-time context of a public meeting making this rule both vague and unworkable.

Further, the speech restrictions have no standards, which encourages arbitrary and discriminatory application. *See Grayned*, 408 U.S. at 108–09; *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008). Where there is "no evidence of objective, workable standards to guide the presiding officer's exercise of discretion," the policy is vague. *See Marshall*, 571 F.Supp. at 424; *Monroe*, 419 F.Supp.3d at 1008.

Here, the standardless restriction encourages councilmembers to silence speech they subjectively deem personal, impertinent, slanderous, or boisterous, using unfettered discretion. *See Draego*, 2016 WL 6834025, at *22. For example, a councilmember may permit an arguably boisterous speaker to praise the Council, while silencing a similarly animated speaker's dissent. Defendants have provided no

---

[3] **Slanderous** is defined as "of bad repute; discreditable, disgraceful, shameful." *Slanderous,* oed.com, https://www.oed.com/dictionary/slanderous_adj?tab=meaning_and_use#22469534 (last visited August 21, 2025).

guidelines to assist councilmembers in assessing public comments. As such, the prohibition is vague.

### B. The district court erred in misapplying the vagueness test.

The district court failed to apply the correct legal test for determining whether the speech restrictions are void for vagueness. ROA.849. Without citing any legal authority, it found that "personal, impertinent, and slanderous are obscure legal concepts, but commonly used words with which people of ordinary intelligence are familiar." *Id*. This contravenes all legal authority on the matter as well as common human experience, for "one man's vulgarity is another man's lyric." *Cohen v. California*, 403 U.S. 15, 25 (1971). The district court substituted its own reasoning for Plaintiff's pleaded facts to independently find that the speech restrictions provide "notice to the public of prohibited conduct and meaningful guidance to the authorities empowered to enforce the policy." ROA.849.

The district court here not only failed to view the factual pleadings in the light most favorable to the Plaintiff but, for the purposes of its vagueness analysis, imported meaning to the word that plainly contravene the facts as pleaded in the case. As a factual matter (and as properly pleaded) Merriott has made only relevant, truthful remarks. His remarks have always been coupled with restraint of conduct, yet he has repeatedly been silenced. There is no support in the record or in the dictionary for the district court's interpretation of Defendant's speech restrictions.

As a legal matter, courts have found similar provisions vague, *see supra* §II(A), because citizens cannot know what speech is prohibited by such rules. The district court's dismissal of Merriott's vagueness claim should be reversed.

### III.    The speech restrictions are viewpoint-based discrimination.

It is a cornerstone of the First Amendment that viewpoint discrimination is impermissible in any forum. *Minn. Voters All. v. Mansky*, 585 U.S. 1, 11 (2018). Such discrimination allows the government to target particular views expressed by speakers, making it the most egregious and blatant form of content discrimination, repugnant to the First Amendment. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829-830 (1995). Officials engage in viewpoint discrimination when speech is restrained because the expressed ideas are offensive to the listeners, because "[g]iving offense is a viewpoint." *Matal v. Tam*, 582 U.S. 218, 220 (quoting *Street v. New York*, 394 U.S. 576, 592 (1969)). Merriott adequately pleaded that Defendant's speech restriction prohibiting personal, impertinent, or slanderous remarks is an impermissible viewpoint-based restriction on its face. ROA.653-655.

The district court erroneously determined that the speech restrictions do not constitute viewpoint-based restrictions because they "seek to prohibit public comment that is disruptive" and limit the "manner of speech" to be "generalized relevant, and truthful remarks coupled with the restraint of conduct." ROA.851. The court relied on its own interpretation of the speech restrictions, not the plain

language. The court also relied on an inapposite case, *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 759 (5th Cir. 2010). The restrictions at issue in *Fairchild* explicitly prohibited "disruption" of a school board meeting by a person's "words or actions." *Id*. at 753.  By contrast, the speech restrictions here make no mention of disruption, much less the effect of a speaker's words. They forbid speech, regardless of whether a meeting is disrupted, and the district court's interpretation of what they intend to do is unsupported by their terms, context, and application. The district court's dismissal of this claim was error and should be reversed.[4]

Restrictions allowing "praise or neutral comment, but not criticism or disapproval" are impermissibly viewpoint-based.  *Monroe v. Houston Indep. Sch. Dist.*, 794 F. App'x 381, 383 (5th Cir. 2019). Similar restrictions on "personal" and "impertinent" speech have been deemed impermissible viewpoint discrimination because they target critical viewpoints but allow favorable viewpoints. *MacQuigg v. Albuquerque Pub. Sch. Bd. of Educ.,* No. 12-1137, 2015 WL 13659218, at *5 (D.N.M. Apr. 6, 2015) (prohibitions on "personal" attacks are viewpoint discrimination); *Mama Bears of Forsyth Cnty*, 642 F.Supp.3d 1338, 1350 (N.D. Ga.

---

[4] The district court erroneously determined the speech restrictions place permissible limitations on public comment.  ROA.81 (finding the restrictions require a speaker's comments to be "generalized, relevant, and truthful remarks").  This applies the wrong test—no "reasonableness" test applies to viewpoint discrimination.  Viewpoint discrimination is not allowed in any public forum, whether public or limited public forum.  *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

2022) (requirement to be respectful and refrain from being rude, insulting or abusive language is viewpoint-based); *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.,* <mark>3 F.4th 887, 893-94</mark> (6th Cir. 2021) (restriction on "abusive, personally directed, and antagonistic statements" impermissible viewpoint discrimination); *see also Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Sch.,* <mark>118 F.4th 1324, 1334</mark> (11th Cir. 2024) (finding a school board policy a prohibiting abusive speech unconstitutional viewpoint discrimination because it "effectively requires "happy-talk," permitting a speaker to give positive or benign comments, but not negative or even challenging ones."). The prohibition of slanderous speech is likewise impermissibly viewpoint-based. *See Draego v. City of Charlottesville,* No. 3:16-00057, <mark>2016 WL 6834025</mark>, at *16 (W.D. Va. Nov. 18, 2016) (rule prohibiting defamatory attacks was unconstitutional viewpoint discrimination).[5]

The purpose of a public-comment period in an open meeting is to allow for robust debate on local governance. This requires that public officials tolerate comments that are "vehement, caustic, and sometimes unpleasantly sharp attacks on

---

[5] Even false speech is protected speech because "[t]he prized American right to speak one's mind,… about public officials and affairs needs 'breathing space to survive," *NY Times Co. v. Sullivan,* <mark>376 U.S. 254, 298</mark> (1964) (Goldman, J., concurring). As such, defamation requires a judicial determination. The Council is unable to make an informed judgment as to whether a citizen made a false statement of fact, with the requisite fault, which harmed the reputation of the council member—*which is the only way a prohibition on slander can be constitutionally upheld.* Bossier's prohibition on slander runs a high risk of ad hoc, unbridled censorship of any speech anyone claims is "false."

government and public officials." *NY Times Co. v. Sullivan*, <mark>376 U.S. at 270</mark>. And speech that is boisterous, personal, slanderous, or impertinent surely may offend some councilmembers, but public officials are expected to shoulder such criticism.

## IV. The speech restrictions are content-based discrimination.

Content-based restrictions are highly suspect in First Amendment jurisprudence and are ordinarily subject to strict scrutiny. Courts have made a narrow exception to the usual scrutiny of content-based restrictions for public forums that the government has opened up expressly for a limited purpose. In a limited public forum, the government may discriminate based upon content *only* if it meets the two-part test articulated in *Minnesota Voters Alliance. v. Mansky.* <mark>585 U.S. 1</mark> (2018).[6] First, a restriction must be reasonable *in light of the forum's purpose*. *Id.* at 2 (emphasis added). This requires the government to show it is "pursuing a permissible objective" by prohibiting certain types of speech. *Id.* Second, the government must provide a reasonable articulation of what speech is prohibited and what is accepted using "objective, workable standards." *Id.* at 21. The district court failed to apply the *Mansky* test. The Bossier speech restrictions fail both prongs. Defendants' speech restrictions do not pursue a permissible purpose in service of the

---

[6] Nonpublic forums and limited public forums utilize the same test. *United States v. Kokinda,* <mark>497 U.S. 720, 730</mark> (1990); *see also Freedom From Religion Found. v. Abbott,* <mark>955 F.3d 417, 426</mark> (5th Cir. 2020).

public meeting's purpose. Neither do they provide objective standards for implementation. Each problem will be addressed in turn.

### A. The speech restrictions do not pursue a permissible objective related to the purpose of the forum.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger,* 515 U.S. at 828. Courts have made a very narrow exception to this general rule to ensure the efficiency of government meetings. Defendants' regulations expand a narrow exception to allow constitutionally repugnant discrimination against ideas deemed disagreeable. This is not what the limited public forum doctrine was intended to do.

The *Mansky* Court recently reminded that restrictions on the content of speech in a limited public forum are valid only in pursuit of a permissible purpose. For example, speech restrictions in a limited public forum may require speakers to be on topic and within time limits, because courts recognize that the purpose of public bodies is to conduct particular official business. *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Employment Relations Comm'n,* 429 U.S. 167, 175 n. 8 (1976). Restricting speech to content that is related to the work of that public body is a permissible objective that is related to the purpose of the forum.

Here, Defendants adopted content-based restrictions that are *not* in pursuit of a permissible purpose—they simply silence contrary views. Protecting public officials from criticism—even criticism that is personal or rude—is not a valid

interest of the government.  *See Bach v. Sch. Bd. of Virginia Beach*, 139 F.Supp.2d 738, 744 (E.D. Va. 2001).

The restrictions do not further the public forum's purpose. On the contrary. Defendant's restrictions actually work against the purpose of the Bossier meetings. They defeat the purpose of the comment period, which is to hear from members of the public on City matters. But citizens are chilled from making commentary lest they face removal. *See e.g., Mama Bears of Forsyth Cnty.*, 642 F.Supp.3d at 1356 (impermissible content restriction because it forbade "profane" and personally directed language).  The restrictions prohibit protected speech that is on-topic and not disruptive.

This Court has affirmed that the very purpose of open meetings is to promote government transparency, prevent corruption, and foster trust in the government. *Asgeirsson v. Abbott,* 773 F.Supp.2d 684, 698 (W.D. Tex. 2011), *aff'd*, 696 F.3d 454 (5th Cir. 2012). The Defendant City articulated that public comment periods in particular are "set aside for specific items of governmental business: debate and comment on proposed ordinances and other agenda items."  ROA.185. The prohibitions on personally directed, boisterous, personal, impertinent, or slanderous public comment do not serve these purposes.

The district court erroneously conflated disruptive *conduct* restrictions at issue in *Fairchild* with the *content* restrictions at issue here. ROA.850-851. As noted

above, *Fairchild*'s restrictions prohibited "disruption" of a school board meeting by a person's "words or actions." 597 F.3d at 753; the restrictions did not refer to a particular type, style, or kind of speech (i.e. personal, etc.). In upholding the content restrictions at issue here, the district court noted that the *Fairchild* restrictions did "not constrain by the content of protected speech[.]" *Id.* at 761. The district court's finding that the instant restrictions are "substantially similar" to those in *Fairchild* is error. Unlike restrictions on actual disruption, the Bossier regulations do not pursue a permissible objective. They serve only to shield officials from criticism. Defendants failed to meet the first part of the *Mansky* test.

## B. The speech restrictions contain no workable standards.

Defendants fare no better on the second *Mansky* prong*, which requires the government articulate what speech is prohibited using "objective, workable standards." 585 U.S. at 21. This requirement is necessary because, when the government distinguishes what content is allowed, it must provide clear and neutral standards to do so. Under this prong, a court must first examine the literal meaning of the words contained in the rules. *See Mansky,* 585 U.S. at 17. Then, a court must analyze the government's definitions and "authoritative constructions." *Id.* (citation omitted). Authoritative construction includes the Council's own interpretation, and—more importantly—its actual implementation. *See Forsyth Cty. v. Nationalist Movement,* 505 U.S. 123, 131 (1992). Defendant's speech restrictions fail to

"articulate some sensible basis for distinguishing what may come in and what must stay out." *Mansky,* 585 U.S. at 17 (citation omitted).

As explained above, *see supra* §II(A), the Council failed to provide any procedural guidelines or definitions clarifying what speech is acceptable and what speech will result removal. Further, the actual implementation of the speech restrictions demonstrates the lack of objective standards. Some citizens are allowed to be off-topic, speak about councilmembers, the mayor, or other city employees, and raise their voices in praise or frustration without being interrupted and threatened with removal. ROA.636-638, 648-649, 651-652. The Council has unfettered discretion to silence speakers who address a comment or question to a councilmember. This is constitutionally prohibited. *See Forsyth Cty.,* 505 U.S. at 131; *Mansky,* 585 U.S. at 21-22. Contrary to furthering any government interests, government objectives are undermined when citizens "experience or witness episodes of unfair or inconsistent enforcement of the [rules]." *Mansky,* 585 U.S. at 22. Because of the standardless subjectivity allowed in the Council's decision as to whether a speaker violates these rules, the speech restrictions are unconstitutional.

The district court erred by completely disregarding the framework of *Mansky* and bluntly applied a principle of allowing content-based discrimination in limited public forums. This oversimplification disregards the nuance and reasoning in the limited public forum line of cases, to the detriment of the Constitution. Rather than

28

viewing the facts in the light most favorable to the Plaintiff, the court concluded without evidence or legal support that the speech rules merely regulate the *manner* of citizen participation.    ROA.851.    This is legal error.  Other courts that have examined this issue treat similar speech restrictions as content and or viewpoint restrictions.[7]  Defendant's content-based speech restrictions do not pursue a permissible objective and fail to articulate workable standards for what speech is permitted.    This is an egregious expansion of what is a limited and carefully cabined exception to the general rule that the government cannot censor content it does not like.    People have a right to be heard by elected officials on important matters.  Although Defendant can limit the content of speakers' comments to agenda items, they cannot otherwise restrict content in a way that prohibits core constitutional speech and stifles protected criticism of public officials.

### V. The speech restrictions are unconstitutional as applied to Merriott.

The district court dismissed Merriott's as-applied claims by making two erroneous conclusions: (1) Merriott failed to sufficiently plead that the Defendant's policy or custom was the moving force behind the violations and (2) the challenged actions were not undertaken by final policymakers, and that therefore he had not

---

[7] *See Monroe v. Houston Indep. Sch. Dist*., 794 F. App'x 381, 383 (5th Cir. 2019); *Moore v. Asbury Park Bd of Educ.,* No. CIV.A.05-2971 MLC, 2005 WL 2033687, at *12 (D.N.J. Aug. 23, 2005); *Griffin v. Bryant*, 30 F.Supp.3d 1139, 1181 (D.N.M. 2014); *MacQuigg v. Albuquerque Pub. Sch. Bd. of Educ.,* No. CV 12-1137, 2015 WL 13659218, at *5 (D.N.M. Apr. 6, 2015); *Mama Bears of Forsyth Cnty.* 642 F.Supp.3d at 1350; *Ison v. Madison Local Sch. Dist. Bd. of Educ.,* 3 F.4th 887, 895 (6th Cir. 2021); *Leventhal v. Vista Unified Sch. Dist.,* 973 F.Supp. 952, 960 (S.D. Cal. 1997).

proven *Monell* liability. ROA.852-857.   Both conclusions are wrong, and the claims should have been allowed to proceed.

The *Monell* doctrine restricts municipal liability to actions for which the local government is responsible and ensures that municipalities cannot evade responsibility for systemic issues that violate constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). To state a claim under *Monell*, a plaintiff must adequately plead that there is (1) "an official policy (or custom)," (2) of which "a policy maker can be charged with actual or constructive knowledge," and (3) "a constitutional violation whose 'moving force' is that policy (or custom)." *Sweetin v. City of Texas City,* 48 F.4th 387, 392 5th (Cir. 2022)*.

The district court correctly held that Merriott sufficiently pleaded that the speech restrictions are an official municipal policy (which was uncontested). ROA.854. The court likewise acknowledged that he pleaded constitutional violations. ROA.855. However, the court erroneously determined that Merriott "failed to allege that the putative constitutional violations he suffered were made pursuant to said policy." *Id*. This was an erroneous finding, as *Merriott* demonstrably pleaded that the policy caused violations of his rights. The court further erred in finding that violations of Merriott's rights were not undertaken by final policymakers.

## A. Defendant's policy was the moving force.

The district court dismissed several allegations regarding Defendant's policy application as conclusory or facially implausible, but this finding ignores properly pleaded facts that individual *Defendants admitted the causal relationship between the speech restrictions and their alleged violation*. Merriott's Complaint not only makes the allegation, but provides concrete evidence of Defendants' own document.

Merriott pleaded that Defendants' application of the speech rules, *i.e.* policy, was the moving force behind his constitutional violations. *E.g.,* ROA.636-637, 640, 642-644, 648-649, 655-656. The Complaint identifies the policy as the cause of his constitutional harms.[8] That allegation, containing factual detail, should alone be sufficient at the Rule 12 stage of these proceedings. Moreover, as Plaintiff pleaded, Defendant Jacobs' letter to the state attorney general admits that *the Council believed Merriott's comments violated "the Bossier City Council rules which prohibit any person making personal, impertinent, or slanderous remarks."* ROA.669 (Exhibit 1) (internal citations omitted). Jacobs stated, *"Mr. Montgomery did request that the City Council President, Mr. Jeff Free, to have Merriott removed from the meeting due to the fact that Merriott violated the adopted City Council rules of decorum and*

---

[8] A footnote in the Magistrate Judge's Report states that "The Decorum Policy does not direct Councilmembers to interrupt speakers, threaten to remove them from Council meetings, or discriminate speakers on the basis of their viewpoints." ROA.855. This misses the point. The rule prohibits speech based upon viewpoint or content, and is the tool used to remove people who run afoul of it.

his demeanor toward the Council and Mr. Montgomery individually." ROA.669. He also claimed that "Merriott violated **all of these provisions** on September 5, 2023." ROA.669.   Defendant's <u>own words</u> show that the policy was the moving force behind Merriott's rights violation.  Defendants' policies were used to interrupt Merriott during his comments, and the rules were read *at him to silence his speech*. ROA.642.  Merriott was told that he could not make a particular allegation about a legal contract, *in a discussion about legal contracts for the City*.  ROA.640, 643-644.

Councilmembers repeatedly interrupted, redirected, and threatened Merriott with removal at multiple meetings when he made critical comments.  ROA.636-637, 640, 642-644, 648-649, 655-656. The City Council applies its rules against Merriott and others who criticize the Council. ROA.636-638, 648-649, 651-652.   Although Merriott spoke on-topic, within allotted time and in professional verbiage, tone, and volume, Defendant interrupted, reprimanded, and called for his removal, based upon official policy.  ROA.644. When other speakers were allowed to continue, Merriott was not—through enforcement of these policies—because of his viewpoint. ROA.636-638, 648-649, 651-652.   Notably, Merriott's comments were consistently directed at the Council's failure to abide by the City Charter and address the citizen-led term-limit petition.  *See e.g.* ROA.639-640, 642-644.  Defendants disagreed with

this viewpoint because they opposed term-limits and weaponized the rules to silence Merriott.

Viewing the clear and detailed allegations in the light most favorable to the Plaintiff, a reasonable factfinder must conclude that official policy and implementation thereof is the moving force behind Merriott's violations. Merriott has certainly met the pleading standard for such. The district court's contrary finding was in error because it unreasonably disputes his well-pleaded allegations at the initial pleading stage when he was entitled to credence. The court's premature judgment of the facts is further exemplified by its analysis of policymaking authority.

## B. Defendants have final policymaking authority.

The district court also erred in concluding that the City Council's actions were not attributable to the municipality because they were not undertaken by final policymakers.  ROA.856.  This conclusion was reached by inexplicably rejecting Plaintiff's allegations that there is an official policy (formally enacted by the Council) and official custom (established by the Councilmembers' enforcement of the speech restrictions in public meetings). Those allegations alone should resolve the question of *Monell* liability at this stage. It is uncontroverted that the rules restricting speech at Bossier council meetings are official policy; they were passed into effect by these Defendants twice: once before and once during the pendency of

this proceeding. *See* ROA.664,1337. Then, the rules are not limited to the written resolution but articulated by the city clerk's actual reading of the rules at the beginning of each meeting. That alone should end the matter.

*Monell* liability extends to the actions of a final policymaker in this case because the speech restrictions explicitly delegate authority to the president pro tempore, Defendant Free. The restrictions which authorize the "President Pro-tem" to bar forthwith from further audience any speaker, and Free consistently wielded the restrictions to silence, censor, and chill the speech of Merriott. Defendant Free's enforcement of the policy was clearly an action attributable to the municipality. Even assuming arguendo that Free was not a final policymaker (which Merriott denies) in this context, then members of the City Council were all policymakers who acted individually to carry out the Council's (municipal) policy.

The district court illogically reasoned that, if a majority vote of the Council is necessary to take action, the Council has final policymaking authority only when there is a majority vote—thus, because there was not a majority vote to interrupt Merriott every time, there was no final policymaker action. ROA.857. This is incorrect, and it permits the municipality to evade liability for actions for which it is clearly responsible. Because the speech restrictions are official policy, adopted pursuant to a majority vote, no further vote is necessary when it is applied to silence the Council's critics. Moreover, the district court erroneously found that the city

clerk's reading of the policy "is not contemplated" by the policy itself, therefore actions taken pursuant to policy *as read aloud* were not taken pursuant to the policy. ROA.855. This logic is contradicted by the court's explicit finding of an official policy, which was uncontested.

Merriott pleaded that final policymakers—Councilmembers—promulgated the policies which led to his harms.[9] Councilmembers set policy for the City as to conduct of its Council meetings.[10] ROA.636-638. Council rules provide that President Pro-tem Free enforces the rules at council meetings. ROA.655. Citing no authority, the district court determined that delegation of authority to President Pro-tem Free was not final policymaking authority.[11] ROA.857. But Merriott adequately pleaded with factual detail that President Pro-tem Free has policymaking authority

---

[9] "Bossier City has delegated to City Council and its members the authority to set rules and the order of business of City Council meetings. City Council, its members, have run afoul of Plaintiff's rights and have done so through official policy and custom of the City **as final policymakers for Bossier City.**" ROA.636 (emphasis added).

[10] The district court dismissed Merriott's official-capacity claims against the Individual Defendants as redundant of the claims against the municipality. ROA.1030. This point illustrates why that dismissal also was erroneous. The Individual Defendants were final policymakers who took action on behalf of the municipality. Dismissing the official-capacity claims as redundant again insulated the municipality from liability taken by the Individual Defendants as final policymakers.

[11] If the only official policy can be made by the body as a whole, and the body as a whole sets a policy allowing silencing of certain content, then when a member—in official capacity—interrupts a speaker they are not setting official policy—they are enforcing official policy—but then the municipality is not liable because only all of the members can adopt policy, and the official capacity defendants are dismissed as redundant against the municipality, one is in a Kafka-esque labyrinth where at once every government official but no government official is responsible. Plaintiff named all officials in official capacities, and defendant sought dismissal. And yet Plaintiff named the municipality, and the municipality disclaims responsibility for the unquestionably official and sanctioned acts of specific government officials. This interpretation is divorced from reality, and creates an unnecessary obstacle to the Court's exercise of its Article III responsibility to vindicate the Constitution in the instance of a very serious constitutional violation.

to govern the meetings *and this must be accepted as true*.  This allegation is further supported by the text of the speech restrictions, which permits the president pro-tem to bar speakers "from further audience before the Council[.]"

"An official may be a policymaker even if a separate governing body retains some powers." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010). Moreover, an unconstitutional policy can be "inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Here, the only officials empowered to enforce the speech restrictions at Council meetings are the City councilmembers, and their exercise of that power is not a discretionary function but an enforcement of official Council policy.

Explicitly and implicitly, the municipality delegated policymaking authority to the City Council with respect to speech restrictions. Because the restrictions contain no standards for their application, or definitions of their terms, Free's subjective interpretation of whether a speaker was boisterous, slanderous, impertinent, or personal is de facto policy. Ultimately, the same is true of other Councilmembers' application of the restrictions. The district court dismissal of Merriott's as-applied challenge on *Monell* grounds should be reversed because the court properly found an official policy, which was enforced against Merriott in an

unconstitutional manner. The policy was promulgated and enforced by an official policymaker, and the district court's contrary holding was error.

### VI.     Defendants retaliated against Merriott because of his speech.

The dismissal of Merriott's First Amendment retaliation claim was in error. A plaintiff has a claim for retaliation when "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). "A required showing of actual injury does not necessarily mean that plaintiffs must cease criticizing the government officials altogether to have a claim for retaliation." *Id.* at 260.

After conceding that Merriott meets two of the three prongs of a retaliation claim ("the City does not contest that Merriott was engaged in constitutionally protected activity and does not make assertions concerning the motivation behind the alleged misconduct"), the district court concluded that because Merriott continued to speak at Council meetings after he retaliatory action was taken, he failed to sufficiently plead that he suffered "an injury that would chill a person of ordinary firmness from continuing to engage[.]" ROA.859 (quoting *Keenan*, 290 F.3d at 258). This is incorrect.

The facts that Merriott was not physically removed from a meeting and has continued to participate in public comment does not negate the fact that his speech has unquestionably been chilled. The district court's arguments otherwise are unavailing and contrary to jurisprudence. A Fifth Circuit decision authored by Judge Jones confirms clearly that self-censorship is a harm that does not require actual prosecution. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020), *as revised* (Oct. 30, 2020); *See also Danielson v. Chester Twp.*, No. 13-5427, 2014 WL 3362435, *5 (D.N.J. July 9, 2014) (interruptions of speaker stated a plausible First Amendment violation); *Ison v. Madison Local Sch. Bd. of Educ.*, 3 F.4th 887, 895 (6th Cir. 2021) (finding First Amendment violation where speaker was interrupted and asked to stop speaking). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Further, the district court's minimization of how Defendants' retaliatory actions impacted Merriott's speech not only fails to draw the reasonable inferences from the Complaint in Merriott's favor, *see Lewis,* 83 F.4th at 953, it is directly contrary to what is pleaded. In fact, Merriott pleaded "Defendants' proposed modification of rules and threats to remove certain speakers from meetings *has a chilling effect* on Merriott's speech." ROA.645 (emphasis added). The Complaint clearly states, "Plaintiff's speech has been chilled in fact by Defendants Darby,

Montgomery, and Free's actions at the Council meetings. Plaintiff *must and does self-censor* for fear of removal and/or retaliation against him for his fully protected speech." ROA.648 (emphasis added). This self-censorship is a clear change in the exercise of his speech, which occurred after retaliatory action was taken. Further, after Defendant Darby interrupted him during public comment, Merriott sent a letter to all Councilmembers requesting that they stop interrupting him. ROA.642. Defendants' actions on August 15 had such a profound chilling effect on Merriott that he chose to address his concerns outside of the Council meetings for fear that Defendants would remove him. The district court's erroneous findings are flatly unsupported by the record in this case.

Finally, as discussed *supra* §V, retaliatory action was taken pursuant to an official policy or custom. The district court's dismissal of this claim is contrary to the facts and law.

## VII. Defendants violated the state Constitution and Open Meetings Law.

The district court dismissed Merriott's Louisiana constitutional claims that are coextensive with his First Amendment claims of vagueness, viewpoint and content-based challenges, as-applied challenges, and overbreadth, but only as to the "conduct prohibitions." ROA.868-872. For the reasons articulated *supra* §§ II, III, IV and V, such dismissal is in error and should be reversed. Similarly, the district court dismissed Merriott's La. Const. art. XII, § 3 claim based on its dismissal of the Open

Meetings Law violation of the closed meeting. ROA.873. Again, this reasoning was in error.

The district court dismissed Plaintiff's claims under the Louisiana Open Meetings Law, finding declaratory judgment unavailable to him and that Defendants' off-the-record conference in the Council chambers was not a "meeting" under the law. Both conclusions are erroneous and should be reversed.

First, the court determined that Merriott was "not removed from any meeting, nor was he barred from attending any meetings," therefore he was not "denied any right conferred" by the OML's provisions. This misunderstands Merriott's claim. The OML explicitly provides a remedy to any person "who has reason to believe that the provisions of [the OML] have been violation[.]" La. R.S. 42:15(C). Merriott is aware that the off-the-record quorum meeting occurred (for the purposes of counting votes to change public comment rules, no less) and he has a right to enforce the statutory penalties.

Second, the district court incorrectly determined that the off-the-record conference was not a "meeting" under the OML because the five Councilmembers present "did not act, vote, or receive new information" about the speech restrictions. ROA.871 This is incorrect. A "meeting" under the OML is the convening of a quorum "to deliberate or act" on a matter. La. R.S. 42:13(A)(2). The five members present in the literal back-room meeting constituted a quorum, and audio from the

meeting reflects them counting votes and choosing dates for proposed new legislation. ROA.660-661. The members present clearly deliberated about the speech restrictions and how the Council would vote. The district court's ruling that the meeting was not a "meeting" under the OML was clear error.

Finally, the court also raises abstention concerns, refusing to consider his state-law claim because it is "improper" for federal courts to "instruct state officials on how to conform their conduct to state law," ROA.868, quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). But this bar does not apply to declaratory relief in this case—finding a violation of state law does not equate to instructing the City Council on how to conform is conduct. Moreover, federal courts often consider pendant state law claims against local officials; abstention is not warranted.

## CONCLUSION

The district court failed to view the facts pled in the Complaint and the inferences therefrom in the light most favorable to the Plaintiff. *See Lewis v. Danos*, 83 F.4th 948, 953 (5th Cir. 2023). This case involves serious allegations of corruption, and silencing of a law-abiding local resident who sought only to hold his elected officials accountable in public meetings. It involves as core of constitutional rights as any this Court could consider. The district court's decision denies Merriott redress based upon a series of legal and factual errors which, if

41

affirmed by this Court, foreclose the Article III courts as a forum for Merriott, when one of the most solemn mandates of the federal court system is to defend our structure of government and individual rights. Plaintiff respectfully requests that this Court reverse the district court's order dismissing Plaintiff's case.

Respectfully submitted,

*/s/Anna Cleveland*
Bruce Hamilton, La Bar No. 33170
Annie Cleveland, La Bar No. 41473
Tulane First Amendment Clinic
6329 Freret Street, Suite 130
New Orleans, La 70118
bhamilton1@tulane.edu
acleveland@tulane.edu
o: (504)862-8813

# CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on September 5, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

Mr. Bobby Stephen Gilliam:
bgilliam@wcglawfirm.com
mgarcia@wcglawfirm.com

Mr. Reid A. Jones:
rjones@wwmlaw.com

Mr. Layne A. Clark, Jr.:
lclark@wwmlaw.com,
cswayze@wwmlaw.com

Mr. Alexander H. Whittington:
alex@kitchenslawfirm.com

Ms. Annie Cleveland:
ACleveland@tulane.edu

Mr. Bruce Hamilton:
Bhamilton1@tulane.edu

*/s/ Anna Cleveland*
Anna Cleveland

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of <mark>FED. R. APP. P. 32(A)(7)(B)</mark> because:

- this brief contains 9,756 words, excluding the parts of the brief exempted by <mark>FED. R. APP. P. 32(f)</mark>.

2.    This brief also complies with the typeface requirements of <mark>FED. R. APP. P. 32(A)(5)</mark> and the type requirements of <mark>FED. R. APP. P. 32(A)(6)</mark> because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word with a 14-point font named Times New Roman.

*/s/Anna Cleveland*
Anna Cleveland
Counsel of Record for Plaintiff-Appellant